This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date:  December 18, 2014**

**NO. 34,487**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**DELVIN CHARLIE,**

Defendant-Respondent.

**Consolidated with:**

**NO. 34,488**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**RUDY NORBERTO,**

Defendant-Respondent.

**ORIGINAL PROCEEDINGS ON CERTIORARI**

**John A. Dean, Jr., District Judge**

Gary K. King, Attorney General
Jacqueline R. Medina, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jorge A. Alvarado, Chief Public Defender
B. Douglas Wood, III, Assistant Appellate Defender
Santa Fe, NM

for Respondents

## DISPOSITIONAL ORDER OF REVERSAL

{1}     The above-entitled and numbered appeal having come before the Supreme Court, each member of the Court having read the briefs of the parties, and otherwise having been fully informed on the issues and applicable law as raised and briefed by the parties; and

{2}     Each Justice having concurred that there is no reasonable likelihood that a decision or opinion would affect the disposition of this appeal or advance the law of the State; therefore,

**IT IS ADJUDGED THAT:**

{3}     Defendants Delvin Charlie and Rudy Norberto are Navajo Nation members. The basic facts of their cases are undisputed. *State v. Charlie*, No. 32,504, mem. op.

¶ 2 (N.M. Ct. App. Dec. 4, 2013) (non-precedential); *State v. Norberto*, No. 32,353, mem. op. ¶ 2 (N.M. Ct. App. Dec. 4, 2013) (non-precedential). In two separate incidents, both Defendants were suspected of driving while intoxicated (DWI) from state land onto the Navajo reservation. They were subsequently stopped on the Navajo reservation by New Mexico State Police officers. *Charlie*, No. 32,504, mem. op. ¶ 2; *Norberto*, No. 32,353, mem. op. ¶ 2. Charlie was stopped by Officer Paul Gonzales and Norberto was stopped by Officer Joseph Schake. *Id*. Upon stopping Defendants, the State Police officers commenced DWI investigations because Charlie and Norberto exhibited signs of intoxication. *See id.*

{4} As part of the DWI investigations, both Defendants were transported off the Navajo reservation to the State Police office in Farmington, New Mexico for chemical testing. *Charlie*, No. 32,504, mem. op. ¶ 2; *Norberto*, No. 32,353, mem. op. ¶ 2. Charlie was subjected to a breath alcohol test and Norberto, having refused a breath alcohol test, was subjected to a blood draw. *Id*. After testing, both Defendants were transported back to a Navajo detention center in Shiprock, New Mexico. *Id.* Both were subsequently booked on tribal charges and later prosecuted in state court under state law. *Charlie*, No. 32,504, mem. op. ¶¶ 2-3; *Norberto*, No. 32,353, mem. op. ¶¶ 2-3. In state court, Defendants filed motions to dismiss for lack of personal jurisdiction. Both of them argued that the State Police officers' failure to follow Navajo extradition protocols violated tribal sovereignty so as to preclude state court

2

prosecution. *Charlie*, No. 32,504, mem. op. ¶ 3; *Norberto*, No. 32,353, mem. op. ¶ 3.

{5} In response to Charlie's motion, the State introduced Officer Gonzales as a witness. Officer Gonzales testified that despite being a State Police officer, he was cross-commissioned by the Navajo authorities to enforce Navajo law on the reservation. The State also claimed that the parties stipulated to Officer Gonzales's cross-commissioning. The defense did not object to this statement. Officer Gonzales explained that as a cross-commissioned officer he was trained by Navajo authorities to transport Navajo suspects off the reservation for chemical testing. Officer Gonzales claimed that the Navajo authorities approved of this practice because: (1) there was a shortage of valid state-certified breath alcohol test machines, and (2) the Navajo reservation did not have facilities that performed blood draws for DWI purposes. Charlie did not challenge any of this testimony. To support Officer Gonzales's testimony, the State introduced the affidavit of a Navajo police officer, Lieutenant Philip Joe. In this document, Lieutenant Joe testified that "[d]ue to [the] frequent unavailability of Breath Alcohol Testing equipment on the [Navajo] Reservation, cross-commission[ed] New Mexico law enforcement officers conducting DWI investigations were permitted to transport Navajo residents off [the] reservation for the purpose of administering Breath Alcohol tests." Charlie argued that despite Officer Gonzales's cross-commission and testimony concerning his training, Officer Gonzales still had to follow the Navajo extradition procedure to transport Navajo

suspects off the reservation for chemical testing.

{6}     Norberto's motion to dismiss rested on the same premise as Charlie's motion to dismiss. In response, the State introduced Officer Schake as a witness. Officer Schake also testified that he was a cross-commissioned State Police officer who was able to enforce Navajo law on Navajo land. He explained that Navajo authorities cross-commissioned State Police officers to reduce response times to suspected Navajo crimes. Officer Schake also explained that because the Navajo Nation lacked crime investigation resources, transport off the reservation was allowed to further Navajo criminal investigations. Norberto failed to challenge this testimony.

{7}     The state district courts denied both Defendants' motions to dismiss. *Charlie*, No. 32,504, mem. op. ¶ 3; *Norberto*, No. 32,353, mem. op. ¶ 3. Both district courts concluded, as a matter of law, that the respective arresting officers were (1) cross-commissioned to enforce Navajo law, and (2) authorized by the Navajo Nation to transport members of the Navajo Nation off the reservation "to complete [their] investigation of . . . Defendant[s'] possible violation of Navajo Nation law." Consequently, both courts concluded that tribal sovereignty was not infringed by the failure to follow extradition procedures.

{8}     In separate appeals, the New Mexico Court of Appeals reversed and remanded both cases back to their respective district courts. *Charlie*, No. 32,504, mem. op. ¶ 13; *Norberto*, No. 32,353, mem. op. ¶ 12. The Court of Appeals held that because cross-

4

commission agreements had to be written, the scope of a waiver of tribal sovereignty cannot be established on either the basis of witness testimony or affidavits. *Charlie*, No. 32,504, mem. op. ¶¶ 11-12; *Norberto*, No. 32,353, mem. op. ¶¶ 10-11. The Court of Appeals remanded both cases to the district courts to analyze the cross-commission agreement to determine the scope of the State Police officers' authority under that agreement. *Charlie*, No. 32,504, mem. op. ¶ 13; *Norberto*, No. 32,353, mem. op. ¶ 12. We granted the State's petition for writ of certiorari in each case to address the question of whether

> [T]he Court of Appeals err[ed] when it ruled that under the facts of [these] case[s,] the district court[s were] required to review the actual cross-commission agreement between the State of New Mexico and the Navajo Nation prior to deciding whether a cross-commissioned officer had the authority to temporarily transport a member off the Navajo Nation for [chemical testing] intended for use in tribal and state court proceedings.

We now reverse the Court of Appeals and remand both cases back to the Court of Appeals to consider other legal issues raised by Defendants.

{9} As described above, Defendants contested neither the State Police officers' testimonies nor the affidavit offered by the State, which were used to establish both the existence and the scope of the cross-commission agreement between the Navajo Nation and the State Police. Furthermore, in their respective motions to dismiss, Defendants never argued that a written agreement was required to establish either the existence or the scope of a cross-commission agreement.

5

{10} Defendants instead relied on *State v. Harrison*, 2010-NMSC-038, 148 N.M. 500, 238 P.3d 869. They correctly noted that "a state officer's investigative authority in Indian country necessarily is limited by tribal sovereignty." *Id.* ¶ 20. *Harrison* held that "a determination of whether . . . an exercise of state authority infringes on tribal sovereignty turns on the existence of a governing tribal procedure." *Id.* ¶ 23 (internal quotation marks and citation omitted). Accordingly, "[w]here a valid extradition procedure exists, the arrest of an Indian on Indian land" by state officers for violations of state law is illegal. *Id.* ¶ 22. Defendants thus appear to rely on *Harrison* for the proposition that irrespective of the State Police officers' cross-commissioned status, extradition procedures must be followed, even when cross-commissioned officers remove Navajos from Navajo land to pursue Navajo criminal investigations.

{11} We conclude that the Court of Appeals's opinion exceeded the scope of review in these cases. *See* Rule 12-216(A) NMRA. Preservation of a question for review requires that "a ruling or decision by [a] district court [be] fairly invoked." *Id.* Here, Defendants did not argue that a written cross-commission agreement had to be entered into the record to properly establish said agreement's scope. Defendants did not contest either the existence or the scope of the cross-commission agreement. Instead, they relied on *Harrison* for the proposition that even cross-commissioned officers investigating Navajo crimes had to follow extradition procedures before transporting Navajos off Navajo land for chemical tests. Consequently, reversing and

6

remanding the district courts' orders for the courts to conduct an analysis into the scope of the cross-commission agreement is improper.

{12} The only remaining question is whether extradition protocols had to be followed in the cases at bar. The Navajo Nation Code states that "[a]ny person lawfully arrested for violating Navajo National criminal law(s) or detained by Navajo Nation Court order shall not be released to any other jurisdiction, including the federal government, except pursuant to formal extradition procedures as set forth in 17 [Navajo Nation Code] § 1951 *et seq.*" Navajo Nation Code Ann. tit. 7, § 607 (2003). Here, Defendants do not dispute that (1) the cross-commissioned officers were investigating violations of Navajo law when they transported Defendants off the reservation for chemical tests, or (2) after the chemical tests were completed, Defendants were returned to the reservation and booked into a Navajo detention center. *Charlie*, No. 32,504, mem. op. ¶ 2; *Norberto*, No. 32,353, mem. op. ¶ 2. Thus, Defendants were never released into the custody of another jurisdiction. Consequently, extradition was not implicated.

{13} Our conclusion is strengthened by an analysis of Navajo extradition procedures. The Navajo Nation Code provides that

> Whenever the President of the Navajo Nation is informed and believes that a person has committed a crime outside of Indian Country and is present in Navajo "Indian Country" and using it as an asylum from prosecution by the state, the President of the Navajo Nation may order any Navajo police officer to apprehend such person and deliver

7

him or her to proper state authorities at the Reservation boundary. Navajo Nation Code Ann. tit. 17, § 1951 (2000). Here, Defendants were never delivered to authorities who were acting as state officers. At the time of Defendants' transport, both arresting State Police officers were acting pursuant to their roles as enforcers and investigators of Navajo law. *Charlie*, No. 32,504, mem. op. ¶ 2; *Norberto*, No. 32,353, mem. op. ¶ 2.

{14} Therefore, there was no need to follow Navajo extradition procedures because Defendants were not transported off the reservation for delivery into the custody of state officials. They were transported as part of an investigation of Navajo crimes and were subsequently booked at a Navajo detention facility. Defendants' argument to the contrary is erroneous as a matter of law.

{15} In summary, the testimony that the Navajo Nation enabled cross-commissioned State Police officers to transport Navajos off the reservation for chemical testing to investigate Navajo Code violations was unopposed. Defendants instead argued that in spite of this testimony, extradition protocols had to be followed. They erred as a matter of law because no extraditions occurred. In addition, because Defendants' only argument for lack of jurisdiction erroneously relied on the purported need to follow Navajo extradition procedures, the Court of Appeals erred in reversing the district court decisions on bases that exceeded the scope of review. As a result, we reverse the Court of Appeals.

{16} However, Defendants raised other arguments on appeal. *Charlie*, No. 32,504, mem. op. ¶ 12; *Norberto*, No. 32,353, mem. op. ¶ 11. We therefore remand these cases to the Court of Appeals to address the remaining contentions in a manner that is consistent with our disposition.

{17} **IT IS SO ORDERED.**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**